IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LWRC INTERNATIONAL, LLC          :
    Plaintiff                              :
    v.                                          :    Civil Case No. L-11-1028
                                                :
MINDLAB MEDIA, LLC, et al.       :
    Defendants                         :

o0o
**MEMORANDUM**

Plaintiff LWRC International, LLC ("LWRCI") brings this declaratory judgment action against Defendants Mindlab Media, LLC ("Mindlab") and Mindlab's owner, Richard "Mack" Machowicz ("Machowicz").  Mindlab and Machowicz now move to dismiss or to transfer the action to the Central District of California.  Docket No. 11.  The issues have been comprehensively briefed, and no hearing is deemed necessary.  See Local Rule 105.6 (D. Md. 2011).  For the reasons stated herein, the Court will, by separate Order, GRANT the Defendants' Motion and DISMISS the case.

I.     BACKGROUND

The facts of the case are set out in detail in the parties' briefs and do not require extensive recitation here.  Defendant Richard "Mack" Machowicz is a former Navy Seal and weapons expert, as well as host of the Discovery Channel and Military Channel show "Future Weapons."  LWRCI is a Maryland LLC that specializes in the design, manufacture, and sale of military, law enforcement, and civilian rifles, carbines, and pistols.

1

Sometime in 2007, Machowicz and Darren Mellors, LWRCI's Executive Vice President, met in New Mexico. LWRCI alleges that a discussion between the two contemplated a straightforward business arrangement: LWRCI would provide Machowicz one of its rifles free of charge, and in exchange Machowicz would send LWRCI photos of himself with the rifle that LWRCI could use in its advertising. The transaction was not immediately consummated, allegedly because Machowicz's agent, when contacted to arrange the details, requested monetary compensation in addition to the rifle. Approximately three years later, Machowicz telephoned Mellors at his office in Maryland, and the parties resumed discussions. The exact nature of the agreement reached is disputed, but the result was that LWRCI sent Machowicz a rifle and he, in turn, emailed the requested photographs to Mellors.

LWRCI then used one of the photos in an advertisement it placed in the March 2011 issue of GUNS & AMMO magazine, and put a similar ad on its website. Soon thereafter, an agent for Machowicz contacted LWRCI and objected to the ads. On March 17, 2011, LWRCI received a cease-and-desist letter from Machowicz's attorneys, asserting that LWRCI's actions "place at risk multi-million dollar [sic] celebrity endorsement opportunities for the hottest celebrity name among gun enthusiasts" and "serve as death nails [sic] to Mack's ability to attract any other legitimate manufacturers of guns, related gun paraphernalia and equipment." Letter from David Pierce, Pierce Law Group, to LWRCI at 2 (March 17, 2011), Docket No. 1-3. The letter recited that a multi-count copyright infringement lawsuit was being prepared, but offered LWRCI a "brief window of opportunity . . . to lawfully acquire what you to date have misappropriated" if LWRCI would agree to a $17.25 million, three-year endorsement deal. Id. at 4.

Negotiations between the parties' legal counsel ensued. Machowicz's attorneys threatened to file suit unless presented with what they considered a bona fide settlement offer by

April 18th. On that date, LWRCI's counsel wrote to Machowicz's counsel, stating that LWRCI had not yet heard back from its insurance company regarding its coverage inquiries, and asking that Machowicz and Mindlab "refrain filing suit while we explore with you the facts on which you would base any claim and determine whether the insurance carrier will be involved." Pl.'s Opp. Ex. H. The next day, April 19th, LWRCI filed this suit seeking a declaratory judgment that its use of the photograph did not violate the Lanham Act, the Copyright Act, or Maryland common law.

On April 21st, Machowicz and Mindlab filed their own suit against LWRCI in the Central District of California, styled Mindlab Media, LLC et al. v. LWRC International, LLC, C.D. Cal., No. 11-CV-03405-CAS-FFMx. On June 27th, that court granted LWRCI's motion to stay proceedings pending a decision by this Court as to where the case should be litigated. It is that question which the Court now addresses.

## II. LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The Court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved

by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If, as in this case, the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Mylan, 2 F.3d at 60; Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan, 2 F.3d at 60; Carefirst, 334 F.3d at 396.

### III. ANALYSIS

Machowicz and Mindlab move for dismissal on three grounds. First, they argue that they have insufficient contacts with the state of Maryland for this Court to exercise personal jurisdiction over them. Second, they argue that LWRCI's claims are not a fit subject for a declaratory judgment action. Finally, they urge that this Court should decline to hear the case and instead allow the suit for damages filed in the Central District of California to proceed. The Court addresses each contention in turn.

4

### a. Personal Jurisdiction

Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst, 334 F.3d at (4th Cir. 2003). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212–13 (4th Cir. 2002).

This Court has explained that this broad reach does not suggest that analysis under the long-arm statute is irrelevant. Rather, it merely reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Dring v. Sullivan, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals, 887 F. Supp. 116, 118–19 n. 2 (D. Md. 1995)). Machowicz's conduct falls within the ambit of the long-arm statute, which states that a party subjects himself to specific jurisdiction if he, inter alia: "Contracts to supply goods, food, services, or manufactured products in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2).

A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to

defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction may be established through either of two avenues. If the defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." In determining whether specific jurisdiction exists, a court must consider: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002); see Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 8 (1984). On the other hand, if the defendant's contacts with the state do not form the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. To establish general jurisdiction, the defendant's activities in the state must have been "continuous and systematic." ALS Scan, 293 F.3d at 712; see Helicopteros, 466 U.S. at 414 & n. 9.

It is obvious that general jurisdiction over the Defendants does not exist in this case, and LWRCI does not argue otherwise. It is undisputed that Machowicz and Mindlab are citizens of California who have no continuous or systematic contacts with the state of Maryland. The question, therefore, is whether the alleged transaction itself gives rise to specific jurisdiction.

The Supreme Court has held that a person does not subject himself to suit in a state merely by entering into a contract with a citizen of that state. "An individual's contract with an out-of-state party alone" cannot "automatically establish sufficient minimum contacts in the

other party's home forum." Burger King v. Rudzewicz, 471 U.S. 462, 478 (1985). Ordinarily, the contract simply memorializes the results of prior negotiations and provides for future actions. "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Id. at 479.

The parties' prior negotiations in this case are somewhat ambiguous. The preliminary negotiations that formed the basis of the eventual deal took place on neutral ground, at a filming location in New Mexico and a trade show in Nevada. After talks had stalled, Machowicz did telephone Mellors's office in Maryland, and in that sense "reach[ed] out beyond" California to negotiate with a Maryland corporation. See id. (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)). This contact alone, however, is too insignificant to be dispositive of the jurisdictional issue.

The parties' actual dealings with respect to the proposed forum are also quite limited. LWRCI delivered a rifle to Machowicz in California, and Machowicz delivered photographs of himself posing with the rifle to LWRCI in Maryland. It does not appear from the record that any future dealings were contemplated. It is a close question whether Machowicz and Mindlab have established such minimum contacts with Maryland that this Court's exercise of jurisdiction over them would do no injury to fair play and substantial justice.

Fortunately, it is not a question that the Court must resolve at this time. As outlined below, the Court would decline to exercise jurisdiction over the case in any event. For purposes of the instant Motion, therefore, the Court may assume, without deciding, that personal jurisdiction over Machowicz and Mindlab would be proper. See Ashwander v. Tenn. Valley

7

Auth, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (internal citation and quotations marks omitted).

### b. Propriety of Declaratory Judgment

Machowicz and Mindlab contend that, even if they are found to be subject to personal jurisdiction in this Court, LWRCI's Complaint does not state a claim for declaratory relief. The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). Without citation to any legal authority, the Defendants assert that "[b]ecause LWRCI has ceased its use of the photograph, a declaratory judgment is not necessary to 'afford relief from uncertainty, insecurity, and controversy.'" Defs.' Mot. to Dismiss 9.

It is unclear whether Defendants are arguing that the Court may not, or should not, hear the case. Both arguments are unavailing. The fact that LWRCI is no longer using the photograph certainly does not mean that there is no "case of actual controversy" and thus no basis for invocation of the Declaratory Judgment Act. There is indisputably a legal dispute requiring the adjudication of the parties' rights and duties, as the Defendants' suit against LWRCI in California shows. Following the Supreme Court's recent decision in MedImmune,

8

Inc. v. Genentech, Inc., "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 127 (2007); see also Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 892 (D. Md. 2008). That standard is clearly satisfied in this case.[1]

To the extent that the Defendants argue that a declaratory judgment action is inappropriate in any situation in which the alleged infringement has ceased on threat of litigation, the Court can find no legal authority for such a proposition, and Defendants have cited none. While Defendants note that the GUNS & AMMO ad was intended to be a one-time placement, they also acknowledge that LWRCI "removed the photograph from its website after Defendants complained." Defs. Mot. to Dismiss 9. Whether LWRCI could legally continue to display the photograph on its website without incurring damages is precisely the type of uncertainty from which a declaratory judgment action would provide relief.

   c. **Applicability of First-to-File**

It has long been settled that a federal court has a measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction. See, e.g., Pub. Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112 (1962); Brillhart v. Excess Ins. Co., 316 U.S. 491, 494 (1942). This discretion is not unbounded, and a district court may not refuse to entertain a declaratory judgment action out of "whim or personal disinclination," Rickover, 369 U.S. at 112, but may do so for "good reason." Quarles, 92 F.2d at 324. Machowicz and Mindlab argue that the pendency of their damages action in the Central District of California

---

[1] While MedImmune was a patent case, a common framework for analysis applies to all patent, copyright, and trademark declaratory judgment suits. Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir. 2009). For obvious reasons, the instant controversy would also satisfy the prior standard, requiring a "reasonable apprehension of suit." See Neuralstem, 573 F. Supp. 2d at 892.

9

constitutes good reason for this Court to decline the exercise of jurisdiction, notwithstanding that the instant suit was filed first. The Court agrees.

When determining which of two identical or substantially similar suits should proceed, the "first-to-file rule" generally affords "priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993); see also Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., 140 F.2d 47, 49 (4th Cir. 1944). It has also been said that the first-to-file rule "should not be disregarded lightly." Church of Scientology v. U.S. Dep't. of the Army, 611 F.2d 738, 750 (9th Cir. 1979). The rule, however, yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation. U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th Cir. 1990).

"In some cases, there may come a point after which the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act of forum shopping, or a race to the courthouse." Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 Fed. Appx. 297, 301 (4th Cir. 2001) (not reported). Courts look with especial disfavor on such preemptive strikes in cases that involve a threat of litigation followed by settlement talks. For example, in Hanson PLC v. Metro–Goldwyn–Mayer, Inc., 932 F.Supp. 104 (S.D.N.Y. 1996), the court found circumstances warranting departure from the first-to-file rule when (1) the plaintiff filed a declaratory judgment action in an attempt to preempt the filing of a lawsuit by the defendant, (2) the defendant in the declaratory judgment action had waited to file suit in reliance upon representations made by the plaintiff's lawyers, and (3) the two cases were filed only one

business day apart.[2]  Procedural fencing of this kind counsels against exercising jurisdiction over a declaratory judgment action.  Learning Network, 11 Fed. Appx. at 301 (citing Myles Lumber Co. v. CNA Fin. Corp., 233 F.3d 821, 824 (4th Cir. 2000); Centennial Life Ins. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996); Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)).

The facts at bar recall those in Hanson, and aptly demonstrate that LWRCI's entreaty to Defendants' counsel to delay filing suit until it could explore the case and speak with its insurance company was little more than a disingenuous feint to allow it to file first and litigate close to home.  LWRCI sent its request for additional time on April 18, 2011, the very day Defendants had threatened to file their infringement suit, and then instituted its declaratory judgment action in this Court the very next day.  Machowicz and Mindlab maintain, rightly, that such guileful forum-shopping must not be countenanced.

LWRCI does not deny its intentions, nor offer any innocent explanation for its behavior.  Rather, it attempts to justify its actions on the grounds that Defendants' "pre-filing conduct reflects a deliberate effort to dress up an almost trivial business disagreement into a major legal controversy and to pressure LWRCI into agreeing to a long-term product endorsement deal with Machowicz. . . .  In these circumstances, LWRCI cannot be faulted for wanting to litigate in Maryland . . . ."  Pl.'s Opp. 14.  It is true that Defendants' demand letters brim with hyperbole and bluster, and litigating a copyright suit on the other side of the country is bound to be unpleasant.  Yet if LWRCI expects this Court to overlook its questionable procedural ploy out of sympathy, it is mistaken.

---

[2]  The court noted that the first-to-file rule holds less sway when the suits are filed extremely close in time, and that allowing defendants to stall an imminent suit with talk of settlement would discourage potential plaintiffs from initiating or participating in settlement negotiations in the first place.  Id. at 107

11

The Court might consider adhering to the first-to-file rule if the balance of inconvenience strongly favored LWRCI.[3] As LWRCI grudgingly admits, however, the factor of party convenience is in equipoise because one party will have to travel across the country in any event. Id. at 15 n. 8. In such a case, the race will certainly not go to the litigant who sprinted for the Courthouse after tying his adversary's shoelaces together. This Court declines to exercise jurisdiction under the Declaratory Judgment Act, and will dismiss the case.

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT Defendants' Motion to Dismiss (Docket No. 11) and DISMISS the case without prejudice.

Dated this 26th day of September, 2011

/s/
_____
Benson Everett Legg
United States District Judge

---

[3] Mack and Mindlab have moved, in the alternative, to transfer this case to the Central District of California based in part on the convenience of the parties, and LWRCI has opposed the motion on the same basis. Because the Court declines to exercise jurisdiction over the case at all, it need not reach this issue.